Filed 7/22/14  Zataren v. Casarez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| HARIM BORJORQUEZ ZATARAEN,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>MIGUEL CASAREZ,<br><br>    Defendant and Respondent. | D064052<br><br><br><br>(Super. Ct. No. GIS27937) |

APPEAL from a judgment of the Superior Court of San Diego County, Kenneth J. Medel, Judge.  Affirmed.

Simpson-Moore, Sean Simpson; The Cross Law Firm and Tamara Cross for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Miguel Casarez (Miguel) raped plaintiff Harim Zataraen while she was working at Colima Produce Market and Deli (the market).  Zataraen filed an action against Miguel, alleging that Miguel had some ownership interest in the market and he was liable for assault and battery, intentional infliction of emotional distress, "premises liability," and

fraud. The complaint also stated claims against Martha Casarez (Martha), who allegedly co-owned the market with Miguel, under a variety of theories.[1] The complaint also purported to name the market as a defendant.

Miguel did not timely answer the complaint and, in April 2008, Zataraen obtained Miguel's default. Martha obtained judgment in her favor on all Zataraen's claims against her. Zataraen then utilized default procedures to seek entry of judgment against Miguel in both his individual capacity and "as co-owner" of or "doing business as" the market. After prove-up hearings stretching over several months, the court entered judgment against Miguel individually, but rejected Zataraen's effort to enter judgment against Miguel "doing business as" the market. Zataraen timely appealed the judgment. On appeal, Zataraen asserts it was error to limit the judgment to Miguel individually and not enter judgment against Miguel "in his capacity as partner/co-owner of" the market.

I

FACTUAL BACKGROUND

In early 2005 Zataraen was hired to work at the market. The parties disputed whether the market was owned solely by Martha or whether Miguel also had an ownership interest in the market.

Miguel immediately began subjecting Zataraen to uninvited sexual advances, which she rebuffed. On February 13, 2005, Martha was away from the market for the

---

[1] The theories against Martha included negligence, respondeat superior, and unfair business practices, and also pleaded claims against her for assault and battery, intentional infliction of emotional distress, "premises liability," and fraud.

2

day and Miguel was supervising the employees, including Zataraen. That evening, Miguel let all of the employees leave for the day except for Zataraen. While Miguel was alone with her at the market, Miguel (acting in concert with another) raped Zataraen. Miguel ultimately pleaded guilty to rape and rape in concert.

II

PROCEDURAL BACKGROUND

A. The Complaint and Default

Zataraen filed her complaint naming Martha, Miguel, and several others as defendants.[2] Zataraen pleaded four claims against Miguel: assault and battery, intentional infliction of emotional distress, "premises liability," and fraud. She pleaded the same claims against Martha and, in addition, pleaded claims against Martha for negligence, respondeat superior, and unfair business practices. Among Zataraen's allegations was that Miguel was an owner of the market. Miguel did not timely answer the complaint. In April 2008, Zataraen obtained entry of default against Miguel under Code of Civil Procedure section 585, subdivision (b).

B. Martha's Summary Judgment Motion

Shortly after Miguel's default was entered, Martha moved for summary judgment. Martha's motion for summary judgment, which asserted she owned the market, argued summary judgment on Zataraen's claims against her was proper because: (1) she had no

---

[2]     Although Zataraen's complaint purported to name the market as a defendant, alleging it was an "entity of unknown form," Zataraen cites no authority or facts demonstrating the market was an entity with the capacity to be sued in this proceeding.

notice of Miguel's violent tendencies and therefore the claim she was negligent in hiring, retaining, or supervising Miguel, or in not warning others about Miguel, was meritless; (2) she could not be liable under respondeat superior principles because an employer is not liable for intentionally tortious conduct by an employee that has no causal nexus to the employee's work; (3) she could not be liable under premises liability principles because she had no reasonable cause to anticipate Miguel would rape anyone and therefore no duty to safeguard against it; (4) she could not be directly liable for assault, battery or intentional infliction of emotional distress because she was not a participant in the attack; (5) she could not be liable for fraud because she did not conceal anything known to her; and (6) Zataraen's unfair business practices claim failed to state a claim on which relief could be granted.

Zataraen opposed the motion, arguing there were triable issues of fact whether Miguel and Martha were co-owners of the market. Zataraen asserted that, if Miguel was an owner, the "partnership" could be liable (under Zataraen's premises liability theory) because Miguel as owner created a dangerous condition on the property by planning the rape. Zataraen also asserted the partnership could be liable because (1) Martha and her staff were negligent by not providing adequate supervision or taking sufficient security measures to prevent the rape, and (2) Martha was vicariously liable for the acts of her partner (Miguel) that occurred in the ordinary course of the partnership's business.

The court ruled that, even assuming triable issues existed as to Miguel's ownership interest in the market, summary judgment was proper in favor of Martha. The trial court concluded Martha's direct liability (under both negligence and premises liability

4

principles) turned on whether she had the duty to control the wrongful conduct of third persons, which in turn required that she could have reasonably anticipated Miguel's wrongful conduct, and there was no evidence raising a triable issue of fact that she could have foreseen Miguel's rape of Zataraen. The trial court also concluded Martha's vicarious liability for the acts of her alleged partner turned on whether Miguel's conduct was committed within the scope of his authority or employment by the enterprise, and there was no evidence raising a triable issue of fact that a rape was within the scope of Miguel's authority or within the type of risks inherent in running a produce store. The court entered summary judgment exonerating Martha. Zataraen did not appeal from the judgment in Martha's favor.

C. The Default Prove-up Hearings and Final Judgment

At the initial default prove-up hearing, Zataraen sought to prove up a judgment that she proposed would be entered against Miguel "[i]n his individual capacity and as co-owner of the market." The court continued the matter to permit additional briefing on whether Miguel was a partner and, if he was, whether the partnership would be liable for Miguel's actions outside the course of his employment or scope of his authority.

At the continued hearing, the court found there was "no legal right to bring the market into the judgment in this case," finding that "even if he was [a partner], I do not find liability on the part of the market itself." Zataraen argued that, because the court had entered judgment in favor of "Martha, doing business [as] the market," the judgment against Miguel should similarly be entered against Miguel "individually, and doing business [as] the market" because there was some evidence he had an ownership interest

5

in the market. The court affirmed its ruling that the default prove-up could proceed against Miguel individually but "not the market."

At the final prove-up hearing, held before a different judge, the court limited the judgment to Miguel in his individual capacity only, and followed the earlier ruling that no judgment would be entered against Miguel doing business as the market. The final judgment confirmed it was against Miguel "as an individual" and did not extend either to the market or to Miguel "dba" the market.

II

ANALYSIS

Zataraen argues the court erred when it declined to enter judgment against Miguel "in his capacity as co-owner of [the market]." Although Zataraen's argument is opaque, it appears she argues the market "is responsible" because Miguel's actions were "sufficiently tied to work activities." Zataraen also seems to argue that, because Miguel was acting in the course and scope of the partnership when he committed the rape, liability may be affixed on "the partnership."

Although there was evidence Miguel owned some interest in the market, Zataraen cites no evidence in the record to suggest the market *was* a partnership, corporation or other juridical entity, separate or distinct from Miguel (see Corp. Code, § 16201), against whom a separate judgment might be entered. Instead, the evidence at most showed that Miguel (along with Martha) operated their business under the dba "Colima Produce Market and Deli." However, " ' "[d]oing business under another name does not create an

6

entity distinct from the person[s] operating the business." ' " (*Pinkerton's, Inc. v. Superior Court* (1996) 49 Cal.App.4th 1342, 1348, italics omitted.)

Although Miguel and Martha may have together owned and operated the market as a proprietorship (cf. *Lundell v. Sidney Machine Tool Co.* (1987) 190 Cal.App.3d 1546), Zataraen's claim that the market is a separate entity against which a judgment could be entered "is untenable because that business has no existence apart from [Miguel and Martha].  'A . . . proprietorship is *not* a legal entity itself.  Rather, the term refers to a natural person who *directly* owns the business . . . .'  [Citation.] . . .  [¶] . . .  The designation 'dba' or 'doing business as' simply indicates that [the owner] operates his . . . proprietorship under a fictitious business name.  [Citation.]  'The designation "d/b/a" means "doing business as" but is merely descriptive of the person or corporation who does business under some other name.  Doing business under another name does not create an entity distinct from the person operating the business.'  [Citation.]  The business name is a fiction, and so too is any implication that the business is a legal entity separate from its owner."  (*Providence Washington Ins. Co. v. Valley Forge Ins. Co.* (1996) 42 Cal.App.4th 1194, 1199-1200.)

Because doing business under a fictitious name does not create an entity distinct from the person operating the business, Zataraen's claim that "Miguel and The Market are liable" for Miguel's acts presents a non sequiter because Zataraen cites no authority suggesting the market is an entity separate from Miguel, and the foregoing authorities demonstrate the market is no more a separate entity from Miguel than any other real or personal property owned by Miguel.  The cases cited by Zataraen on appeal for the

proposition that an "employer" can be liable for the harassing acts of its supervisor or agent are irrelevant because all those cases involve affixing vicarious liability on a separate entity, and there is no evidence the market *is* a separate entity, or that any *other* separate entity exists here.

Zataraen also argues "the partnership or joint venture is liable" for Miguel's rape of her. There was no evidence a partnership or joint venture was formed separate from the proprietorship (cf. Corp. Code, § 16202, subd. (c)(2) [co-ownership of property does not by itself establish partnership]), much less that a partnership or joint venture was separately named as a party. Moreover, even assuming there *was* a partnership or joint venture that would have been a distinct juridical entity, Zataraen does not suggest the entity was served with process. (Cf. Corp. Code, § 16310 [methods for serving process on partnerships].) Zataraen cites no authority that serving process on an individual, when the complaint alleges such individual was a partner or joint venturer in an entity, would (upon default of the individual served) permit entry of a default judgment *against the partnership or joint venture*, and we therefore deem waived any claim that judgment should have been entered against the unnamed partnership or joint venture.[3] (*McComber*

---

[3]    The only legal argument proffered by Zataraen on appeal asserts that, on the merits, a partnership or joint venture can be held liable for the *negligence* of a partner or joint venturer that occurs in the transaction of the business of the partnership or joint venture, or even reckless misconduct done within the scope of the wrongdoing partner's authority. However, the complaint served on Miguel as to which default was entered *pleaded only intentional torts as against Miguel*, and the alleged "negligence" by Miguel was added by Zataraen's First Amended Complaint *after* Miguel's default was entered and, on the record before us, that pleading was never served on Miguel. We disregard any prove-up of the alleged negligence by Miguel because that prove-up would be a

8

*v. Wells* (1999) 72 Cal.App.4th 512, 522 [" '[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.' "]; *Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3 [contention deemed waived because "Appellant did not formulate a coherent legal argument nor did [he] cite any supporting authority."]; *Colores v. Board of Trustees* (2003) 105 Cal.App.4th 1293, 1301, fn. 2 ["The dearth of true legal analysis in [his] appellate briefs amounts to a waiver of the [contention] and we treat it as such."].)

Although Zataraen cites *Blew v. Horner* (1986) 187 Cal.App.3d 1380 to argue the liability of partners for torts, being joint and several, permits an action to be brought against one partner that would bind the partnership without joining the partnership or other partners (*id*. at p. 1393), the cited language from *Blew* is dicta and, in addition, appears inconsistent with other cases holding that imposing personal liability on other partners for obligations owed by the partnership requires joinder of both the partnership and the individual partners. (See, e.g., Corp. Code, § 16307, subds. (b) & (c); *Fazzi v. Peters* (1968) 68 Cal.2d 590, 596-597.) We conclude the trial court did not err when it

---

nullity. (See *Jackson v. Bank of America* (1986) 188 Cal.App.3d 375, 387; accord *Balfour-Guthrie Inv. Co. v. Sawday* (1901) 133 Cal. 228, 230 ["As against a defaulting or disclaiming defendant, the relief must be consistent with *the case made upon the complaint and* embraced within *the issues.*"], italics added; *Ellis v. Rademacher* (1899) 125 Cal. 556, 557 ["A default admits *the material allegations of the complaint*, and no more. . . . [T]he relief given to the plaintiff cannot exceed that which the law awards as *the legal conclusion from the facts alleged.*"], italics added; *Burtnett v. King* (1949) 33 Cal.2d 805 [defendant in a default action " 'ha[s] the right to assume that the judgment which would follow a default on her part would embrace only the issues presented by the complaint' "].)

9

denied Zataraen's application to have judgment entered against either the market or against Miguel doing business as the market.

## DISPOSITION

The judgment is affirmed.

McDONALD, J.

WE CONCUR:

HALLER, Acting P. J.

IRION, J.